No. 12,656.

ESTATE OF CALLAHAN.
CALLAHAN *v.* FELDMAN.
(11 P. [2d] 217)

Decided April 18, 1932.

Mr. JOHN H. REDDIN, Mr. J. F. LITTLE, for plaintiff in error.

Messrs. YEAMAN, GOVE & HUFFMAN, Mr. SHERMAN A. SUTLIFF, for defendant in error.

*En Banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

IN January, 1929, Richard E. Callahan died at Fitzsimons General Hospital, Denver, Colorado, leaving a purported will and testament by which he disinherited his father, Thomas Callahan, who was his sole and only heir at law, and left all of his property of the estimated value of about $15,000 to Rose Feldman in trust for the education of her three minor children. January 21, 1929, Mrs. Feldman, as the executrix named in the will, presented the same for probate in the county court of the City and County of Denver. On February 1, 1929, Kate Callahan was appointed by the probate court of Franklin county, Ohio, as the guardian of the estate of Thomas Callahan, the father of Richard, deceased, and thereafter, as such guardian, filed in the Denver county court her caveat and objections to the probate of the purported will, in which she alleged that at the time of its execution by Richard he was not of sound mind and memory, specifying the nature of his mental disorder. Upon a hearing in the county court the issues were found in favor of the proponent of the will, and the contestant, Kate Callahan, as guardian of the estate of her brother, appealed from such adverse judgment to the district court of the City and County of Denver, where, in a trial by a jury, its verdict on the issues was in favor of the proponent, upon which the district court rendered the appropriate judgment allowing the probate of the will in dispute. The case comes here by a writ of error prosecuted by Kate Callahan as guardian of the estate of her brother.

In the opening brief of the plaintiff in error her counsel say that the principal question for determination upon this record, in which all the numerous assignments of error in the case are embraced, is: May an expert witness be permitted, against objection, to give in evidence his opinion as to the sanity or insanity of the testator based upon conflicting evidence, the expert having been present during the entire trial and observed the witnesses on the stand and heard all the evidence produced by both parties? Counsel for contestant say that there is a con-

flict in the evidence as to the sanity or insanity of Richard E. Callahan and because of this conflict it was improper for the trial court to permit the two expert witnesses, Dr. Philip Work and Dr. Cyrus L. Pershing, physicians and qualified psychiatrists, to testify that in their opinion, based upon all of the testimony in the case, Richard E. Callahan was a sane man and understood the nature of his acts at the time he made his will. The questions propounded to these expert witnesses were not strictly, or perhaps not at all, hypotheical in their nature, nor was there incorporated therein the assumption that the evidence, or any material part thereof, upon which the opinion was sought, was true. The entire argument by counsel for contestant on this review is based upon the contention that there was such a conflict in the evidence as to the facts elicited by the testimony of the witnesses in behalf of the contestant and the facts elicited by the testimony of the witnesses for the proponent. In other words, contestant's real objection to this adverse judgment is based upon her contention that each of the two expert witnesses was permitted, over her objection, to give his opinion as to the sanity or insanity of the testator based upon conflicting evidence, all of which he heard during the entire trial and observed the witnesses as they testified. Probably the usual method in· eliciting testimony of an expert witness is to have him testify in answer to hypothetical questions which assume that all, or certain parts of the testimony, are true; not to ask him, as was done here, his opinion as to the sanity of a testator based upon all the evidence in the case which he had heard from the lips of the witnesses themselves. But the authorities are not unanimous upon the subject. In *Expansion Co. v. Campbell,* 62 Colo. 410, 163 Pac. 968, Mr. Justice Hill quotes with approval Rogers on Expert Testimony (2d Ed.), §29, the following excerpt: "It· is not always necessary that a hypothetical question should be asked in a formal manner." And further quotes from section 46 of the same author the following: "His (an

expert's) opinion to be admissible must be founded either on his own personal knowledge of the facts, upon facts testified to in court, or else upon an hypothetical question." In 22 C. J., p. 717, §806, the author, in commenting upon the practice in some of the courts in cases where the facts are not in serious dispute, of dispensing with a recital of facts in hypothetical questions and asking the witness to state his judgment upon the evidence, or even upon such a part of it as is material to the inquiry, says that the better practice is to proceed in a regular manner and frame a hypothetical question. A number of courts, however, uphold the practice where the witness, as here, has heard the evidence or is familiar with it and where the question must require the witness to assume that it is true. In *Enyart v. Orr*, 78 Colo. 6, (238 Pac. 29), at page 17, Mr. Justice Adams, in speaking of hypothetical questions, says: "It is not essential that the facts be undisputed, but hypothetical questions cannot be based upon suppositions of which there is no evidence, tendency of evidence, nor any offer of evidence." In 1 Wigmore on Evidence (2d Ed.), p. 1095, §686, et seq., the learned author thus states in legislative form what he considers a proper and the better rule of procedure as follows: "Where an expert witness has not had personal observation of matters of fact, in the case in hand, but has listened to or read any or all of the testimony or depositions to such matter of fact, he may be asked, by the party calling him, to state his conclusion, without specifying in the question the data forming the basis of the conclusion; unless the trial court otherwise directs or permits." The author further states his opinion that whatever method is used the discretion of the trial court, unless manifestly abused, should not be interfered with by a reviewing court.

But if we are in error in our conclusion that, in the circumstances stated, the trial court properly permitted each of these expert witnesses to base his testimony that Richard E. Callahan was sane upon all of the testimony

produced at the trial, there is another, and in itself a satisfactory, ground upon which to base an affirmance of the judgment. The abstract of the evidence does not purport to contain a summary of the entire evidence. Though not required to do so under our rules, the writer has read and examined the transcript, and we are in accord with the statement of the judge who presided at the trial that there is no conflict at all as to the material facts between the testimony elicited from the witnesses for the contestant, and the facts brought out by the witnesses for the proponent. Indeed, there was no attempt by the proponent to controvert the facts testified to by the witnesses for the contestant, and no attempt by the contestant to overcome or contradict the testimony as to the facts testified to by the witnesses for the proponent. These witnesses respectively were permitted to testify as to their opinion concerning the mental condition of the maker of the will and the conflict, if any, in their testimony is not as to any facts, but merely as to the conclusion from the facts which they reached as to the mental competency of the testator.

The mental competency of the maker of the will is to be ascertained from his state of mind at the time he made his will and not what it might have been at some previous time. This will was made in February, 1928. None of the witnesses in behalf of the contestant even purported to pass upon his mental state at the latter date and the nearest approach thereto was as to a time several months before the date of the will. The trial court in overruling plaintiff's motion for a new trial laid emphasis upon the fact that there was no controverted testimony as to the facts, and that the only difference between the witnesses was as to their conclusion therefrom as to Richard's state of mind.

In this connection we refer to the transcript of the record as disclosed in the bill of exceptions. In the examination by counsel for the proponent he asked Dr. Work if in his opinion Richard E. Callahan on or about Febru-

ary 8, 1928 (the date the will was executed), had and possessed sufficient mentality and soundness of mind to know the following: The names, and stations in life of his relatives, and their claims, if any, upon him? Counsel for the contestant thereupon interposed the following objection: "Now, that is objected to, your Honor, the form of the question, and the former objection, Doctor Work under the rules can answer any question as to whether in his opinion based on all of the evidence in this case, this man was of sound mind and memory. That is what the statute says." "The Court: Read this question. That was objected to and overruled." Whereupon the last question was read and the court sustained the objection. Discussion by opposing counsel was had and the court again said that he thought the question was improper. Counsel for proponent then propounded the following question to Dr. Work: "Q. In your opinion did Richard E. Callahan on or about February 8th, 1928, have and possess sufficient mentality and soundness of mind to know what he desired to do with his property in the event of his death?" to which counsel for the contestant again made the same objection because the jury is the judge of the facts. The court sustained the objection. Thereupon counsel for the proponent asked the following question: "Q. In your opinion was or was not Richard E. Callahan on or about February 8th, 1928, of sound and disposing mind and memory?" Counsel for the contestant said: "What is that based on, that question may go to anything. If it is based on all of the testimony in the case—" Whereupon the court interrupted with this statement: "Well, it strikes the Court that the question theretofore propounded to the witness and answered by the witness brings that in." Whereupon counsel for the contestant said: "Then I object to the question as leading. He should have asked the witness what his opinion was so long as he stated he knows, not to put the answer in his mouth. Of course, I know putting it in the Doctor's mouth would not mean

anything because he is too intelligent.'' The court then asked to have the last two questions again read and they were read and the court said: ''Incorporate that in the question.'' Whereupon counsel for the proponent, evidently intending to frame the question to meet the objections made by counsel for the contestant and sustained by the court, propounded to Dr. Work the following question: ''Q. From all of the testimony that you have heard in this case, Doctor, you say that you have been able to form an opinion as to the mental condition of Richard E. Callahan on or about February 8th, 1928. I ask you to state that opinion.'' To which Dr. Work gave the following answer: ''A. I believe that I have already stated that Richard E. Callahan was certainly sane.'' ''Q. What have you to say on or about February 8th, 1928, as to his testamentary capacity?'' ''A. He was both sane and had testamentary capacity in my opinion very definitely.''

No objection was made to these questions which the witness answered. The questions propounded were apparently satisfactory both to the court and also to counsel for the contestant, as no objection was made by him as to the form of the questions, or to the answers that were given. It thus clearly appears that the admission of Dr. Work's testimony as to the sanity of Callahan, was not objected to at the time, and the form of the question propounded was framed to meet the views of protestant's counsel. And again counsel for contestant, in stating his views as to the scope of the examination of an expert witness said, referring to Dr. Work: ''He can give his opinion on the facts that he has heard in this case but to put him in the position of a juror and say what had been found, I make the objection you can not do it, is going too far altogether.'' And the court sustained counsel's objection to the question as framed. Thereupon counsel for the proponent asked the following question: ''Q. Doctor, in your opinion as an expert witness, having heard all the evidence in this case, did

Richard E. Callahan have symptoms subjective of alcoholic psychosis?'' ''A. In my opinion he did not.'' ''Q. Or alcoholic insanity?'' ''A. It is the same thing, he did not.'' There were no objections by the contestant either to these questions or to the answers. Counsel for proponent also asked of the other expert, Dr. Pershing, the following questions: ''Then, Doctor Pershing, from all of the evidence of the contestant's witnesses that you have heard, you have been able to form an opinion as to the competency of Richard E. Callahan on or about February 8th, 1928?'' ''A. I can.'' ''Q. What is that opinion?'' ''A. That he was competent.'' There was no objection by the contestant to these questions. In the course of the cross-examination of Dr. Pershing, he was asked by the contestant's counsel the following: ''Now, in arriving at your opinion, what action have you taken in regard to this conflicting evidence?'' ''A. Well, I would feel that I could regard simply the one side of the case as presented by the contestant as not showing anything, any definite evidence of insanity or incompetency.'' ''Q. You have heard all of the testimony?'' ''A. Yes sir, I have.'' ''Q. You discard certain evidence then?'' ''A. No, I am not discarding any evidence, I say if you ask me about the conflicting part of it, I can form an opinion on one side of the case. Now, the other evidence helped me to interpret that opinion, it helped me to strengthen it.'' ''Q. Then, you are taking the other evidence into consideration?'' ''A. I can or cannot according to what you want me to do.'' ''Q. I am asking you, Doctor?'' ''A. Well, in giving my opinion I have taken all of the evidence into consideration. When you come to specify and analyze my mental reports I told you that is so, but also that I can discard the evidence on the proponent's side and just consider the evidence on the contestant's side and can say that that did not show that Richard E. Callahan was mentally incompetent or insane.'' ''Q. You would further testify, Doctor, that

548

you also found corroboration of the evidence on the other side?" "A. Yes, I think so."

Counsel for contestant, although this testimony of Dr. Pershing just recited was elicited by him, objected thereto upon the ground that he cannot be permitted to segregate the evidence and discuss only one feature of it and for that reason moved that the testimony of Pershing be stricken from the record, which the court overruled.

We have thus, perhaps at unnecessary length, reproduced part of the testimony of these expert witnesses chiefly for the purpose of demonstrating that the contestant is not in position to be heard upon the real objection which she urges here to the adverse judgment because her contentions below are inconsistent with the position taken here. It should be said that the testimony of Dr. Work, taken as a whole, discloses that he was in agreement with what Dr. Pershing stated to be his own conclusion as to the basis for his opinion that Callahan was sane and was possessed of testamentary capacity to make a will.

The judgment is affirmed.