## No. 14,570.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY
OF CROWLEY *v.* DESMOND.
(90 P. [2d] 619)

Decided May 8, 1939.

Mr. CHAS. C. WOOLDRIDGE, for plaintiff in error.

Mr. HARRY E. MAST, for defendant in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

DEFENDANT in error Desmond, a physician, filed a claim against Crowley county in the sum of $264.50 for professional services rendered a nonresident indigent person. The claim was disallowed by the board of commissioners. On appeal to the district court from the board's decision, the court, on motion, at the conclusion of defendant's case, directed a verdict in favor of the physician for the amount of the claim. The commissioners, seeking reversal, apply for supersedeas, and ask that the matter be finally determined on the application.

The claim was grounded on section 4, chapter 124, volume 4, '35 C. S. A., C. L. §8908, which reads as follows: "When any non-resident or any other person, not coming within the definition of a pauper, shall fall sick in any county of this state, not having money or property to pay his or her board, nursing and medical attendance, it shall be the duty of the county commissioners, upon complaint being made to them or either of them, to give an order that such assistance be given to such poor person as they may deem just and necessary, and if said sick person shall die, then the said county commissioners, or commissioner, shall order to be given to such person a decent burial, and the county commissioners may make such allowance for board, nursing and medical aid or burial expenses, to the person or persons entitled thereto, as they shall deem just and equitable, and order the same to be paid out of the county treasury."

The facts that gave rise to the controversy are as follows: One Austil Boyd, an itinerant laborer from Arkansas, admittedly within the statute as a person "not having money or property," on January 5, 1938, was working at a threshing machine on a farm near Ordway, when his

left arm "rubbed against the pulley shaft" and "got caught in the machine." The arm was so badly broken and lacerated that amputation was necessary.

Immediately after the accident, one Henderson who was running the threshing outfit, prevailed upon a neighbor to take Boyd in his car to Ordway. Not knowing who the county physician was and realizing that immediate medical attention was necessary, Boyd was taken to Dr. Desmond's office. The doctor gave first aid treatment and ordered Boyd taken to the hospital at La Junta. After inquiry into the circumstances, Dr. Desmond told Henderson to report the case to the county commissioners, which Henderson did on the following day by personally relating the story to Dillon, the chairman of the board. Dillon said that he would look into the matter, but would have preferred to have had Boyd taken to a hospital in Colorado Springs because the rates there were lower.

As stated above, the arm had to be amputated and Boyd was in the hospital for over three months, during which time Dr. Desmond saw him almost daily.

Mr. Dillon admitted on the witness stand the conversation with Henderson and said, "I told him that I would make an investigation and find out about it." Dillon did make the investigation, and conferred with the other commissioners concerning the matter but he failed to notify Dr. Desmond as to whether he should or should not continue to act on the case, although two of the commissioners—one being Dillon—were in Desmond's office and discussed the case with him a short time after the accident and both commissioners were fully advised as to the facts at that time. Dr. Desmond made no demand on the commissioners for payment of his bill until after Boyd had been released from the hospital. At a meeting of the board, later, the claim, as before stated, was disallowed, "for the reason that said services had never been authorized by any member of the board of county

commissioners.'' It is undisputed that the county did pay Boyd's hospital and nurses' bills.

The assignment of error upon which plaintiff in error principally relies is that it appears from the record that the doctor's claim was not verified. The bill was attached to the usual form used for claims at that time which the doctor signed, he assuming, as he probably was justified in doing, that the blank acknowledgment would be filled in and seal attached by the county clerk or his deputy in the usual manner. If there was any dereliction in this behalf, it was on the part of the person accepting the claim for filing. Be that as it may, the county commissioners passed on the unverified claim, and no objection was made at the trial as to its form; consequently the county cannot urge the objection here for the first time, for at least two reasons: First, Questions which are not raised below and passed upon by the trial court will not be considered on review. *Friedrichs v. Midland Co.*, 94 Colo. 563, 31 P. (2d) 493. Second, a litigant in this court will not be permitted to assume a position inconsistent with that taken in the trial court. *Illinois Building Co. v. Patterson*, 91 Colo. 391, 15 P. (2d) 699; *Callahan v. Feldman*, 90 Colo. 540, 11 P. (2d) 217.

The other objection, to the effect that the doctor failed to establish a contract for services, is equally without merit, because the statute, section 4, supra, places that duty upon the board of county commissioners, and since the treatment Boyd required, and his admitted circumstances, brought his case within the statute, the county now is estopped to say it did not authorize the services.

The judgment clearly is right and is affirmed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE BURKE concur.