505 P.2d 50 (1972)
In the Matter of the ESTATE of Susie A. GARDNER, Deceased.
Betty Jane RANALS et al., Caveators-Appellants,
v.
FIRST NATIONAL BANK OF DENVER, Proponent-Appellee.
No. 71-216.
Colorado Court of Appeals, Div. II.
October 25, 1972.
Rehearing Denied November 14, 1972.
Certiorari Denied January 29, 1973.
*51 Carroll & Bradley, P. C., Rebecca L. Bradley, John S. Carroll, Denver, for caveators-appellants.
White & Steele, Walter A. Steele, Denver, for proponent-appellee.
Selected for Official Publication.
COYTE, Judge.
The parties appear here in the same order as in the trial court. Caveators-appellants bring this appeal from an order of the Denver Probate Court dismissing their caveat to the Last Will and Testament of Susie A. Gardner, deceased. We affirm the order admitting the will to probate.
The first issue involves the application of the so-called "Dead Man's Statute", C. R.S.1963, 154-1-2(1):
"No party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein, of his own motion, or in his own behalf, by virtue of section 154-1-1, when any adverse party sues or defends as the . . . executor or administrator, heir, legatee or devisee of any deceased person, or as guardian or trustee of any such heir, legatee or devisee;. . . ."
The first of the caveators' claims is based upon the alleged mental incompetence of the testatrix at the time she executed the will in question. In order to establish their claim, caveators desired to rely upon the testimony of Olive Gardner, caveator and heir, who would take if the attack on the will were successful. The proponent objected to her testifying on the ground that Olive Gardner "was a person directly interested in the event" of the lawsuit. The trial court sustained the objection. Thereupon, Olive Gardner took the witness stand and, in an attempt to establish her competency, disclaimed any interest in the estate. The court ruled that she had not become qualified as a witness by virtue of her disclaimer. This was proper and in accordance with C.R.S.1963, 154-1-5, which states:
"In any civil action, suit or proceeding, no person who would, if a party thereto, be incompetent to testify therein under the provisions of section 154-1-2 or 154-1-3, shall become competent by reason of any assignment or release of his claim, made for the purpose of allowing such person to testify."
The effect of this statute is to bar Olive Gardner from disclaiming her interest in the lawsuit in order to establish her competency as a witness. Inasmuch as she was clearly a party in interest, she was properly excluded as an incompetent witness.
Caveators contend that the trial court also erred in refusing to allow caveators' witness James Murchison to testify. He was the husband of one of the caveators and a medical doctor. He was not listed as a witness in the pre-trial order, nor added as witness within the time requirements set forth in the pre-trial order. In the offer of proof, it was disclosed that he would testify as to his observations of the deceased and also render a medical opinion as to her competency. The court refused to allow him to testify as an expert and then caveators requested that he be allowed to testify as a lay witness. This was also refused. The court then stated there had *52 been ample time to list witnesses and that proponent would be prejudiced and deprived of time to prepare for trial if the witness were allowed to testify.
The purpose of such pre-trial disclosure of witnesses is to enable all parties to prepare for trial. See Glisan v. Kurth, 153 Colo. 102, 384 P.2d 946. Under C.R. C.P. 16 wide discretion is vested in the trial court to determine whether a witness who has not been listed on the pre-trial order and whose name has not been disclosed to the opposing party may testify. The court did not abuse its discretion in refusing to allow Dr. Murchison to testify.
Caveators' next assertion of error is that the trial court improperly received evidence of testamentary capacity outside the presence of a jury. This asserted error is without merit. The will contains a properly executed attestation clause and the signature of three witnesses. The pre-trial order contains the following provision:
". . . the Court out of the presence of the jury panel will receive testimony of witnesses to the will on formalities of execution and thereafter as the trial proceeds to a jury the caveators will proceed first after the Court determines the question of proper execution of the will except for the issue of testamentary capacity."
The record shows no objection to the pretrial order nor the procedure prescribed therein, until the start of the trial. Caveators failed to show any prejudice resulting from the receiving of evidence of attesting witnesses outside the presence of a jury, and we can perceive none, particularly in view of the fact that the trial court was careful to rule that any party could recall either of the attesting witnesses for any purpose during the trial before the jury.
The caveators also contend that the court erred in refusing to admit any of the medical evidence on the issue of testatrix's mental capacity. We disagree.
The caveators called five doctors who had seen or attended the testatrix many years after the date of the signing of her will. The testatrix had been adjudicated as mentally incompetent some six and one-half years after the signing of the will. In order to establish that testatrix was not possessed of sufficient mental capacity to execute a valid will, the evidence offered by caveators must be calculated to establish her mental incapacity at the time of the execution of the will. Callahan v. Feldman, 90 Colo. 540, 11 P.2d 217. The trial court properly ruled that the time period of the proffered testimony was too remote in nature and its value as evidence of testatrix's mental capacity on the date the will was executed was speculative and of no probative value. Callahan v. Feldman, supra.
The trustee of a trust, which was established by testatrix's husband during his lifetime, was the prime beneficiary of testatrix's will. Caveators urge that the trial court erred in holding the trust agreement to be valid. They contend that it was not charitable; that its purpose was not sufficiently clear; and that the class of beneficiaries was not sufficiently definite to permit the trustee to administer the trust or to permit court direction in its administration. We disagree, and uphold the ruling of the trial court that the trust was a valid charitable trust.
As regards its charitable purpose, the trust provided as follows:
"The net income and that part of all of the principal of this trust deemed necessary for the purpose by the Board, shall be used to establish scholarships or otherwise to assist persons selected by the Board, in acquiring an education. Pursuant thereto the trustee shall distribute such principal and income at such times in such amounts and to such persons as the Board from time to time by majority vote may direct."
The trust agreement further provides that it is the desire of the trustor to create a charitable trust. The range of educational *53 benefactions which are valid as charitable trusts is wide.
"A charitable use, where neither law nor public policy forbids, may be applied to almost anything that tends to promote the well-doing and well-being of social man." Ould v. Washington Hospital for Foundlings, 95 U.S. 303, 24 L.Ed. 450.
Under this definition, trusts for the purpose of funding scholarships, such as in the instant case, are valid as charitable. In re Miller, 149 App.Div. 113, 133 N.Y.S. 828.
"`The fact that the bequest does not specify the particular individuals who shall benefit is no obstacle to the carrying out of the trust. . . .'" Smith v. United States National Bank of Denver, 120 Colo. 167, 207 P.2d 1194. (quoting with approval from Jeffreys v. International Trust Co., 97 Colo. 188, 48 P.2d 1019)
Further, a charitable trust is sufficient if the testator has provided in the instrument some method or means of selecting from the class or group the particular individuals to receive the benefit. In the instant case the settlor sufficiently indicated her intent that the trust should be administered in accordance with the trust purpose of promoting education and under that plan the Board had authority to select the particular beneficiaries.
The caveators next argue that inasmuch as the trust was only nominally funded it was invalid.
Colorado has solved the problems raised by a trust which is only nominally funded during settlor's lifetime. 1967 Perm.Supp., C.R.S.1963, 153-5-44(1), provides, in pertinent part, as follows:
"A devise or bequest, the validity of which is determinable by the law of this state, may be made by a will to the trustee or trustees of a trust established. . . by some other person . . . regardless of the existence, size, or character of the corpus of the trust."
This statute eliminates the question as to the value of the trust assets which must be placed in a trust in order to make it a valid trust.
For the purposes of the instant case, 1967 Perm.Supp., C.R.S.1963, 153-5-44(2), puts to rest another problem raised by the caveators, namely: whether a living trust becomes testamentary when a pourover is made into it. It does not. Therefore, the instrument creating the trust need not be executed with the formality of a will. See Huff, An Aspect of Estate Planning in Colorado; The Revocable Inter Vivos Trust, 43 Denver Law Journal 296.
We stated in In re Estate of Allen (Allen v. First National Bank), 28 Colo.App. 574, 475 P.2d 629:
"To create a valid `pour-over' provision. . . it is only necessary that the trust be evidenced by a written instrument; that the trust be in existence at the time the will is executed; and that the trust be capable of being identified with reasonable certainty."
These requirements were met in the instant case.
Caveators finally assert that C.R. S.1963, 153-16-2, contains provisions that require a copy of such trust agreement to be certified and filed for record in the office of the Secretary of State. We disagree. The statute applies only to charitable corporations and has no application to the factual situation of the instant case.
The order admitting the will to probate is affirmed.
SILVERSTEIN, C. J., and ENOCH, J., concur.