In the Matter of the ESTATE OF William C. SCOTT, Deceased.

Samuel C. Scott, Appellant,

v.

Mark A. Scott, Appellee.

No. 03CA0631.

Colorado Court of Appeals, Division II.

Dec. 16, 2004.

Rehearing Denied Feb. 24, 2005.

Certiorari Granted Aug. 22, 2005.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3) and § 24–51–1105, C.R.S.2003.

Hamil/Hecht, LLC, J. Lawrence Hamil, Fred Furst, Denver, Colorado, for Appellant.

Sims & Boster, C. Garold Sims, Frank W. Suyat, Denver, Colorado, for Appellee.

Opinion by Judge CARPARELLI.

In this probate proceeding, Samuel C. Scott (proponent), appeals the probate court's order granting partial summary judgment in favor of Mark A. Scott (objector) and denying partial summary judgment to proponent, determining that William C. Scott (decedent), proponent's father and objector's grandfather, lacked the legal capacity to exercise a power of appointment. We reverse and remand for further proceedings.

## I.

Objector contends that proponent's appeal is untimely and that, as a result, this court lacks jurisdiction. We disagree.

## A.

In 1997, in a second codicil to his will, decedent purported to exercise a power of appointment regarding the assets of a trust. Decedent died in 2000. Upon decedent's death, objector petitioned the probate court to probate decedent's will and the first codicil and to exclude the second codicil. Proponent filed a petition in the same action seeking probate of the second codicil and seeking appointment as the personal representative.

Objector filed a motion for partial summary judgment, contending that the exercise of the power of appointment in the second codicil was ineffective. Proponent then filed a motion for partial summary judgment arguing that there was no evidence upon which to invalidate the second codicil. On November 18, 2002, the probate court denied proponent's motion and granted objector's motion, finding, based on a letter from decedent's personal physician, that decedent lacked legal capacity to exercise the power of appointment. Four days later, the court issued an amended notice of trial, stating that designation of the personal representative remained to be decided.

In December 2002, proponent asked the court to certify, as final for appeal, the partial summary judgment regarding the validity of decedent's attempt to exercise the power of appointment.

In an order dated February 11, 2003, the court denied that motion, referring to the fact that the balance of the trust estate had been frozen so that there could be no withdrawals for any purpose without order of the court and concluding, therefore, that there was substantial justification to defer appeal until all issues were resolved. However, in the same order, the court also resolved the only other issue then pending between the parties by denying proponent's request that he be appointed personal representative of the estate. Proponent filed a notice of appeal on March 28, 2003, seeking review of both the November 18, 2002 and February 11, 2003 orders. Arguing that the appeal was either premature or untimely as to the November order, objector moved to dismiss the appeal. After proponent responded, the motions division of this court deferred determination of that issue to the division deciding the case. Accordingly, we first determine whether the notice of appeal was timely filed. We conclude that it was timely.

## B.

Pursuant to §§ 13–4–102, 15–10–308, C.R.S.2004, and C.A.R. 1(a), final judgments of the probate court are reviewable on appeal. To perfect an appeal, a notice of appeal generally must be filed within forty-five days from the date a final judgment is entered. *See* C.A.R. 4(a). The timeliness of this appeal as to the November 18, 2002 order depends on whether that order was a final judgment when entered.

## 1.

■ Unlike most lawsuits, the probate process may continue after the court has resolved the claims of one or more claimants and may include additional hearings when other claimants submit new and unrelated claims to be resolved. Thus, probate proceedings do not necessarily involve the same parties throughout, and unrelated claims may be resolved in separate hearings. *See In re Estate of Cook,* 245 So.2d 694 (Fla.Dist.Ct. App.1971). Despite this, both the legislature and the supreme court have directed that C.R.C.P. 54 be applied to such proceedings.

The Colorado Rules of Civil Procedure, including the rules related to appellate review, govern proceedings under the Colorado Probate Code "[u]nless specifically provided to the contrary in [the Code] or unless inconsistent with its provisions." Section 15–10–304, C.R.S.2004; *accord* C.R.C.P. 1.

An appeal to this court may generally only be taken from a final judgment of the trial court. C.A.R. 1(a). The supreme court has consistently held that a final judgment is one that ends the particular action and leaves nothing more for the trial court to do to completely determine the rights of the parties. *E.O. v. People in Interest of C.O.A.*, 854 P.2d 797 (Colo.1993); *Mission Viejo Co. v. Willows Water Dist.*, 818 P.2d 254 (Colo. 1991); *Kempter v. Hurd*, 713 P.2d 1274 (Colo.1986); *Moore & Co. v. Williams*, 672 P.2d 999 (Colo.1983); *Harding Glass Co. v. Jones*, 640 P.2d 1123 (Colo.1982); *Stillings v. Davis*, 158 Colo. 308, 406 P.2d 337 (1965); *see In re Estate of Dodge*, 685 P.2d 260 (Colo. App.1984).

■ C.R.C.P. 54(b) provides an exception whereby a trial court may direct the entry of final judgment as to fewer than all a party's claims, but may do so only upon an express determination that there is no just reason for delay. The purpose of this rule is to avoid dissipation of judicial resources through piecemeal appeals. *Harding Glass Co. v. Jones, supra.* In the absence of a determination by the trial court that there is no just reason for delay, an order that adjudicates fewer than all the claims in an action does not terminate the action as to any of the claims, and the order is subject to revision at any time before the entry of judgment adjudicating all the claims. C.R.C.P. 54(b).

Nowhere does the Probate Code state that these rules are to be interpreted differently or not applied in probate cases.

In *In re Estate of Binford v. Gibson*, 839 P.2d 508 (Colo.App.1992), a division of this court stated that a probate order is final when it "disposes of and is conclusive of the controverted claim for which that part of the proceeding was brought." *In re Estate of Binford v. Gibson, supra*, 839 P.2d at 510. Although the division cited *Estate of Dodge* as support for this premise, there is no language in *Estate of Dodge* that supports the existence of such a test in Colorado. Instead, the test appears to come from a decision of the Texas Court of Appeals, which uses virtually identical language. *See Estate of Wright*, 676 S.W.2d 161, 163 (Tex.App. 1984)("A probate order or judgment is final if it finally disposes of and is conclusive of the issue or controverted question for which that particular part of the proceeding was brought.")(citing, among other Texas cases, *Fischer v. Williams*, 160 Tex. 342, 331 S.W.2d 210 (1960)).

■ We conclude that we are bound by § 15–10–304, C.R.C.P. 1 and 54(b), C.A.R. 1(a), and the decisions of our supreme court, and that the "test of finality" referenced in *Binford* is not derived from any of these sources. Consequently, absent an amendment to the Probate Code, the rules of procedure, or a decision of the supreme court, the application of such a rule by this court creates policy and procedure that is contrary to the applicable statute and rules and, as a result, sets a trap for litigants and trial courts.

Indeed, neither *Estate of Binford* nor the Colorado and Texas cases upon which it relies reached conclusions that were plainly contrary to C.R.C.P. 54(b). *See, e.g., In re Estate of Binford v. Gibson, supra* (order to refund excessive compensation to conservatorship was an appealable final judgment when no other claims were pending regarding appellant's entitlements from and obligations to the conservatorship and only administration of the conservatorship remained); *In re Estate of Dodge, supra* (denial of co-conservator's motion regarding homestead exemption was an appealable final judgment when no other claims were pending before the probate court and all that remained was administration of the estate); *see also Estate of Wright, supra* (summary judgment regarding petitions of heirship was an appealable final judgment when no other claims were then pending, notwithstanding district court's subsequent invalid reconsideration and setting aside of the judgment).

Thus, we conclude that, in accordance with Colorado statute and rules, the same rules of finality apply here as in other civil cases.

■ In accordance with C.R.C.P. 54(b), when there are no active contested claims against an estate, administration of the estate need not be completed before a probate court's judgment regarding all pending claims and parties is final for appellate purposes. C.A.R. 1(a); C.R.C.P. 54(b).

### 2.

■ Here, proponent's petition sought admission of decedent's second codicil into probate and appointment as personal representative of the estate. The probate court resolved proponent's first claim when it granted objector's motion for partial summary judgment in November 2002. When the court entered that order, proponent's petition for appointment as the personal representative was still before the court and awaiting resolution. The court did not resolve that petition until February 2003. Moreover, the court explicitly denied proponent's motion for C.R.C.P. 54(b) certification of its grant of partial summary judgment, stating there was "substantial justification ... to defer appeal until all issues are resolved."

Because proponent simultaneously raised two issues with the probate court and the court's November 2002 order adjudicated fewer than all proponent's pending claims in the proceedings, it did not constitute a final judgment. Moreover, proponent complied with Colorado law and rules when he sought certification of the judgment, objector opposed C.R.C.P. 54(b) certification, and the probate court was within its discretion when it ruled that there was substantial justification to defer appeal until the remaining issue was resolved.

Therefore, proponent's appeal as to the November 2002 denial of partial summary judgment was timely filed after the court's February 2003 order resolved the only issue pending between the parties.

### II.

Proponent contends that the probate court erred when it denied his motion for partial summary judgment validating the second codicil and granted partial summary judgment to objector invalidating the power of appointment contained in it. We agree.

When the probate court ruled on the motions, the following petitions and motions were pending:

1. Objector's petition to probate decedent's will and first codicil and not to admit decedent's second codicil; proponent's opposition to objector's petition; proponent's petition to probate the second codicil.

2. Proponent's motion for partial summary judgment arguing that decedent's execution of the second codicil was valid; objector's opposition to proponent's motion.

3. Objector's motion for partial summary judgment arguing that decedent's exercise of the power of appointment was invalid; proponent's opposition to objector's motion.

### A.

■ We first conclude that the probate court erred when it denied proponent's motion for partial summary judgment regarding decedent's testamentary capacity when he executed the second codicil.

Although denial of a motion for summary judgment is not itself an appealable final order and, in addition, may not be appealed after a full trial, here the order denying summary judgment also granted summary judgment to objector and disposed of the case. Consequently, there is an appealable final order and we may consider whether the court correctly applied the law and whether any factual issues exist regarding proponent's motion. *Feiger, Collison & Killmer v. Jones,* 926 P.2d 1244 (Colo.1996); *Udis v. Universal Communications Co.,* 56 P.3d 1177 (Colo.App.2002).

A person has testamentary capacity if he or she is an "individual eighteen or more years of age who is of sound mind." Section 15–11–501, C.R.S.2004. The soundness of a

testator's mind may be evaluated under either the *Cunningham* test or the insane delusion test. *See Breeden v. Stone,* 992 P.2d 1167 (Colo.2000).

Under the *Cunningham* test, a person has testamentary capacity when (1) he understands the nature of his act; (2) he knows the extent of his property; (3) he understands the proposed testamentary disposition; (4) he knows the natural objects of his bounty; and (5) the will represents his wishes. Under the insane delusion test, a person lacks testamentary capacity when he suffers from an insane delusion that materially affects his disposition in the will. *In re Estate of Gallavan,* 89 P.3d 521 (Colo.App. 2004).

To prove that a testator lacked sufficient testamentary capacity to execute a valid will, the evidence must establish lack of capacity at the time of the will's execution. *Southwick v. First Nat'l Bank,* 33 Colo.App. 86, 515 P.2d 484 (1973); *In re Estate of Gardner,* 31 Colo.App. 361, 505 P.2d 50 (1972). Although evidence of senile dementia on an earlier date may be relevant, it is not dispositive of the testator's capacity when the will was executed. *See Hanks v. McNeil Coal Corp.,* 114 Colo. 578, 168 P.2d 256 (1946).

Consequently, expert testimony regarding a testator's lack of capacity at a time prior to the execution of the will may support an inference of lack of capacity when the will was executed. However, its probative value may diminish in proportion to the amount of time between the events underlying the expert's opinion and the testator's execution of the will. The weight to be given to evidence of capacity at a time prior to execution of the will rests with the trier of fact. *Southwick v. First Nat'l Bank, supra.*

Objector does not respond to proponent's contention that decedent had testamentary capacity and that the second codicil is valid. Instead, he argues that the power of appointment is invalid under the terms of the trust.

In response to proponent's motion, objector presented the probate court with the letter in which decedent's physician stated that (1) "[Decedent] suffers from progressive dementia"; and (2) "It is necessary for his Power of Attorney to make medical, legal and financial decisions for him as he cannot do this for himself."

Proponent argued that the letter was not dispositive because it was written nearly twenty-one months before decedent executed the second codicil. He also submitted transcripts of testimony from related proceedings which indicated that decedent had testamentary capacity when he executed the second codicil.

We conclude that the probate court erred because (1) decedent's testamentary capacity is a question of fact that must be determined by application of the *Cunningham* test; (2) proponent's pleadings submitted evidence that satisfied each element of the *Cunningham* test; and (3) the physician's letter refers to a remote time and does not address any of the elements of the *Cunningham* test and, thus, was insufficient to create a genuine issue of material fact regarding decedent's testamentary capacity in December 1997.

### B.

We conclude that the probate court also erred when it granted objector's motion for partial summary judgment regarding decedent's capacity to exercise the power of appointment.

In his motion, objector argued that decedent's attempted exercise of the power of appointment was not valid because the physician's letter provided certification that decedent lacked capacity consistent with the standard established in Article 10.09 of the trust agreement. Objector relied primarily on the statements in the physician's letter quoted above.

In the interpretation of a trust, the intent of the settlor must be given effect. *In re 1942 Gerald H. Lewis Trust,* 652 P.2d 1106 (Colo.App.1982). If the settlor's intention is reflected in the document, then the document is unambiguous, and a court will not consider extrinsic evidence to interpret it.

Article 10.09 of the trust agreement provides that, for purposes of the trust, decedent could be treated as being under legal disability, incompetent, or incapacitated if so certified in writing by his personal physician.

Proponent argued that, when the physician provided the letter, the physician believed the opinions related to concerns about tax issues and that the physician did not intend that his opinions be used as written certification for purposes of the trust agreement. He also argued that the letter was not dispositive of decedent's capacity to exercise the power of appointment because the letter predated decedent's exercise of the power by nearly twenty-one months and there was other evidence that decedent was competent when he executed the second codicil and exercised the power of appointment.

We first conclude that Article 5.01.C established the standard to be applied to determinations of whether decedent had legal capacity to exercise any or all powers granted in the trust agreement. Consequently, we conclude that it was proper for the court to apply that standard when it evaluated decedent's legal capacity to exercise the power of appointment.

However, we conclude that proponent's opposition to objector's motion for partial summary judgment established a genuine issue of material fact regarding whether the physician's letter satisfied the requirements of Article 10.09 and a genuine issue of fact regarding decedent's capacity to exercise the power of appointment in December 1997. Therefore, we conclude that the probate court erred when it granted partial summary judgment regarding that issue.

The judgment is reversed, and the case is remanded to the probate court for further proceedings.

Judge METZGER* concurs.

Judge CASEBOLT dissents.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

Judge CASEBOLT dissenting.

Because, in my view, the November 18, 2002 order was a final judgment when entered, proponent's notice of appeal is untimely. Hence I would dismiss the appeal, and therefore respectfully dissent from part I of the majority opinion.

*Stillings v. Davis,* 158 Colo. 308, 310, 406 P.2d 337, 338 (1965), defines the term "final judgment" as "one which ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceeding." Hence, generally, an entire case must be resolved by a final judgment before an appeal can or must be brought. Section 13–4–102(1), C.R.S.2004; *Pham v. State Farm Mut. Auto. Ins. Co.,* 70 P.3d 567 (Colo.App. 2003).

Ordinarily, under C.R.C.P. 54, an order that adjudicates fewer than all claims or the rights and liabilities of fewer than all parties is not final, but remains interlocutory and thus not subject to appeal absent an express certification of finality by the trial court under C.R.C.P. 54(b). In probate cases, however, the requirement for resolution of the entire case as a condition of finality makes little sense. As the court stated in *In re Estate of Cook,* 245 So.2d 694, 695 (Fla.Dist.Ct.App. 1971):

> It is apparent upon reflection that probate proceedings differ from ordinary litigation in that the rights of outside parties are from time to time determined and orders entered in the course of administration result in payment, or the necessity for filing suit, whereas the ordinary action involves the same parties throughout and a single appeal from final judgment is appropriate.

Hence, an entire probate case need not be concluded before an order is final for appellate purposes. *See In re Estate of Dodge,* 685 P.2d 260 (Colo.App.1984)(order constituted a complete determination of the rights of the three parties as to the homestead exemp-

§ 24–51–1105, C.R.S. 2004.

tion and was therefore an appealable final judgment).

The Colorado Probate Code furnishes minimal guidance as to which probate court orders are deemed final for purposes of appellate review. *See* § 15–12–107, C.R.S.2004 (unless supervised administration is involved, each proceeding before the court is independent of any other proceeding involving the same estate; proceedings for probate of wills may be combined with proceedings for appointment of personal representatives; a proceeding for appointment of a personal representative is concluded by an order making or declining the appointment); § 15–12–412, C.R.S.2004 (a formal testacy order is final as to all persons); *In re Estate of Dodge, supra.* Therefore, that determination is made on a case-by-case basis. *In re Estate of Binford v. Gibson,* 839 P.2d 508 (Colo. App.1992); *In re Estate of Swanson,* 98 Mich.App. 347, 296 N.W.2d 256 (1980).

In probate cases, "[t]he test for determining finality is whether an order disposes of and is conclusive of the controverted claim for which that part of the proceeding was brought." *See Estate of Binford v. Gibson, supra,* 839 P.2d at 510. If, on the one hand, the order merely leads to further hearings on the same issue, it is interlocutory, and no appeal can or must be commenced. Indeed, such an order cannot be appealed, absent certification under C.R.C.P. 54(b). If, on the other hand, additional hearings are not required, the order is final and appealable, and hence the time within which an appeal must be commenced begins to run, even though other aspects of the administration of the estate remain for disposition. *See Estate of Binford v. Gibson, supra.*

Here, the probate court's November 18, 2002 order completely determined the issue of decedent's legal capacity to execute the second codicil, which purported to exercise the power of appointment, and was conclusive of that controverted claim. The order did not merely lead to further hearings on the same issue. Indeed, no additional hearings were required. Hence, I conclude that the order was final and appealable on that date even though proponent's request to be appointed personal representative and other

aspects of the administration of the estate remained for disposition. Because the order was final and appealable on November 18, 2002, proponent's notice of appeal, filed on March 28, 2003, was well in excess of the forty-five days provided for in C.A.R. 4(a). Hence, it was untimely, and I would therefore dismiss the appeal for lack of jurisdiction as to that November order.

I note that the parties and the probate court were under the impression that C.R.C.P. 54 governed the finality of the order for purposes of appeal. Indeed, the court's refusal to certify the November 18 order as final under C.R.C.P. 54(b) is an indication of its belief that proponent could not appeal that order. In ordinary civil cases, that determination would be correct. However, this is a probate proceeding, and even though § 15–10–304, C.R.S.2004, provides that the Colorado Rules of Civil Procedure govern formal proceedings under the Probate Code, including appellate review, I perceive that *Estate of Binford v. Gibson, supra,* and *In re Estate of Dodge, supra,* govern finality here, not C.R.C.P. 54.

The majority reasons that proponent raised two issues in the probate court and that the November 18, 2002 order adjudicated fewer than all his pending claims in the proceedings; hence it did not constitute a final judgment. However, I interpret the phrase "controverted claim for which that part of the proceeding was brought" employed in *Estate of Binford* to mean each discrete controverted *issue* that involves substantial rights of the parties. *See Estate of Wright,* 676 S.W.2d 161 (Tex.App.1984). Because the effect of the second codicil was to exercise a power of appointment that would have placed assets under proponent's control and direction rather than under objector's, it involved a substantial right and was itself an issue discrete from the issue concerning appointment of the personal representative. *See In re Estate of Ove,* 114 Colo. 286, 163 P.2d 651 (1945)(collecting cases determining that various probate court orders were final and thus subject to appellate review); *In re Estate of Franchs,* 722 P.2d 422 (Colo.App.1986)(order determining issue of statutory authority or qualification of a party

to be personal representative is final and appealable).

Accordingly, I would hold that C.R.C.P. 54 is not applicable in this case to render the November 18 order interlocutory. While I acknowledge that this resolution would present a trap for the unwary, the law regarding this issue has been clearly settled since, at the latest, 1992, when *Estate of Binford* was decided. *See generally* Leonard P. Plank & Anne Whalen Gill, *Colorado Appellate Law and Practice* § 4.17 Probate Proceedings (1999).

In view of this determination, I would hold that we have no jurisdiction to review the merits of proponent's contentions concerning the court's resolution of decedent's legal capacity to exercise the power of appointment. Accordingly, I would dismiss the appeal with prejudice and, in light of that conclusion, would not reach the merits as the majority does in part II of the opinion.