**Laura E. UDIS, Executive Director, Colorado Collection Agency Board, Plaintiff–Appellant,**

v.

**UNIVERSAL COMMUNICATIONS COMPANY, Defendant–Appellee.**

No. 01CA0758.

Colorado Court of Appeals, Div. V.

April 11, 2002.

Certiorari Denied Nov. 4, 2002.

Ken Salazar, Attorney General, Paul Chessin, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellant.

Hale, Hackstaff, Tymkovich & Erken-Brack, L.L.P., Richard W. Daily, Timothy M. Tymkovich, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge DAVIDSON.

In this action for injunctive relief for violations of the Colorado Fair Debt Collection Practices Act (Act), § 12–14–101, et seq., C.R.S.2001, plaintiff, Laura E. Udis as administrator of the Colorado Collection Agency Board, appeals from the judgment determining that defendant, Universal Communications Company, is not a "collection agency" for purposes of the Act. We reverse and remand.

The following facts are undisputed. Defendant's business offers a "Telegram Notification" service, by which it delivers messages to individuals targeted by its subscribers. Defendant mails the individual a notice, which is "uniquely designed" to obtain a high response rate, informing the individual that there is a voice telegram waiting for him or her. To retrieve the recorded message, the individual is directed to call a toll-free num-

ber and to enter an identification code, which is supplied by the subscriber and printed on the notice. Each of defendant's subscribers is assigned a different toll-free number, and when the individual calls the number and enters the identification code, he or she receives a recorded message, usually directing the individual to contact the subscriber directly. While defendant may provide sample messages to its subscribers, the written messages in the notification and the recorded messages are authored or approved by the subscribers.

In addition to delivering the notice and recorded message, defendant's business offers a "Tel–Scan" service by which it "captures" the individual's telephone number when the individual makes the toll-free call. The individual is not informed that the telephone number is being recorded, and the individual cannot block transmission of the telephone number. Defendant then provides the individual's telephone number, matched to the individual's identification code, to its subscriber. The combined service is marketed as a tool for debt collectors, law enforcement personnel, and others to contact hard-to-reach people, for example, those with unlisted, private, or nonpublished telephone numbers.

Plaintiff's complaint alleged that defendant's services violated the Act, and she sought injunctive relief. The parties filed a statement of stipulated facts, and plaintiff then filed a motion for judgment on the pleadings or, alternatively, summary judgment. Relying on *Romine v. Diversified Collection Services, Inc.*, 155 F.3d 1142 (9th Cir.1998), which held that similar services constituted "debt collection" under the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, et seq. (2001), plaintiff argued that she was entitled to judgment because the Act's definition of a "collection agency" is identical to the definition of a "debt collector" under the FDCPA. The court, citing the dissent in *Romine*, determined that defendant was not a "collection agency" and denied plaintiff's motion. It then entered judgment in favor of defendant, dismissing the case with prejudice. Plaintiff appeals.

## I.

■ In *Romine, supra,* 155 F.3d at 1143, the Ninth Circuit determined that a service by which the defendant "obtains debtors' telephone numbers by eliciting responses to personal delivery telegrams, then disseminates the unlisted numbers to creditors and collection agencies" constituted the indirect attempt to collect a debt under the FDCPA. In its analysis, the *Romine* court noted that similar conduct, indistinguishable from defendant's here, was characterized as the indirect attempt to collect a debt by the Federal Trade Commission (FTC), the administrative agency charged with enforcement of the FDCPA.

Plaintiff contends that defendant's service is no different from that in *Romine* and that in light of the purposes of the Act and plaintiff's interpretation of it, the trial court erred when it determined that defendant is not a "collection agency" under the Act. Defendant argues that *Romine* is distinguishable and that Colorado should follow the view expressed in the dissent that similar conduct is merely a messenger service rather than the "indirect" collection of a debt. *See Romine, supra,* 155 F.3d at 1150 (Fernandez, J., dissenting)(at most defendant used "a devious means to collect the debtor's telephone number, but telephone number collection is not debt collection" under the FDCPA). We agree with plaintiff.

## A.

The issue here is a question of law and review is de novo. *See Vail/Arrowhead, Inc. v. Dist. Court,* 954 P.2d 608 (Colo.1998).

■ When analyzing a state statute, interpretation of an analogous federal statute is persuasive. *See Furlong v. Gardner,* 956 P.2d 545 (Colo.1998). The interpretation of the statute given by administrative officials charged with its enforcement is entitled to deference. Section 2–4–203(1)(f), C.R.S.2001; *Bluewater Ins., Ltd. v. Balzano,* 823 P.2d 1365 (Colo.1992).

Under the Act, a "collection agency" is required to obtain a license and is subject to regulation. The Act's definition of a "collec-

tion agency" includes "any ... [p]erson who engages in a business the principal purpose of which is the collection of debts; or ... [r]egularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." Section 12–14–103(2)(a), C.R.S.2001.

■ The Act is patterned on the FDCPA. *See Commercial Serv. of Perry, Inc. v. Fitzgerald,* 856 P.2d 58 (Colo.App.1993). The FDCPA contains language nearly identical to that in the Colorado statute, but uses the term "debt collector" rather than "collection agency." It defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (2001). To the extent that a state statute provides less protection than the FDCPA, the federal statute preempts it. 15 U.S.C. § 1692n (2001).

■ Like its federal counterpart, the Act is a remedial consumer protection scheme that is designed to protect consumers from various abusive practices engaged in by "those in the business of collecting stale debts who are likely to have no further contact with the consumer and often are unconcerned with the consumer's rights or needs." *Commercial Serv. of Perry, Inc. v. Fitzgerald, supra.* Statutes that are remedial in purpose should be construed liberally. *See Shapiro & Meinhold v. Zartman,* 823 P.2d 120 (Colo.1992).

■ The definition of a "collection agency" contained in § 12–14–103(2)(a)(II)(A), C.R.S.2001, includes one who "[r]egularly collects or attempts to collect, directly or indirectly, debts owed or due ... another." It is not necessary that one "gain possession of a debt, or personally benefit financially from the satisfaction of a debt" to be considered a "collection agency" under the Act. *See Romine, supra,* 155 F.3d at 1146. When determining whether a defendant is a "collection agency," the defendant's activity, rather than its formal status as a collection agency, is

dispositive. *See Trull v. Lason Sys., Inc.,* 982 F.Supp. 600 (N.D.Ill.1997).

Under the Act, the collection of personal information for use in the attempt to collect a debt is considered a part of the debt collection process. *See* § 12–14–107(1)(k), C.R.S. 2001 (prohibiting "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer"). When communicating with a consumer in writing, even for the limited purpose of collecting a telephone number, a "collection agency" must disclose that it is attempting to collect a debt. *See* § 12–14–107(1)(*l*), C.R.S.2001 (prohibiting the "failure to disclose clearly, in the initial written communication made to collect a debt or obtain information about a consumer, that the debt collector or collection agency is attempting to collect a debt and that any information obtained will be used for that purpose"). Any communication with a consumer made by telephone in connection with the collection of a debt requires "meaningful disclosure of the caller's identity within the first sixty seconds after the other party to the call is identified as the debtor." Section 12–14–106(1)(f), C.R.S.2001.

### B.

Defendant argues that, by delivering messages from its subscribers to targeted individuals and gathering electronic information related to the telephones used by the targets to respond to the messages, it is only a "messenger service" for its collection agency subscribers. We do not agree.

As did the majority in *Romine,* we conclude that defendant's actions—marketing to collection agencies a service by which it gathers from consumers and identifies otherwise unknown telephone numbers to be used by the collection agency for purposes of debt collection—bring it sufficiently close to the transaction to be "indirectly" attempting to collect a debt. *Cf. People v. Blair,* 195 Colo. 462, 579 P.2d 1133 (1978)(defining "indirectly" for purposes of securities law).

Here, it is undisputed that defendant mails notices that are designed to look like telegrams to hard-to-reach debtors, urging them

to call a toll-free number. It is further undisputed that when the debtors do so, their previously unavailable telephone numbers are captured, matched to the specific debtor, and provided to defendant's subscribers. This service constitutes seventy percent of defendant's business. Thus, it is clear that defendant is directly gathering personal information about consumers that its subscribers use to attempt to collect debts.

Importantly, defendant specifically markets its "Telegram Notification" service to collection agencies, informing them:

> 95% of collections are made by phone communications with the debtor. When this communication is established, the full balance is collected in one out of eight accounts. Therefore, Telegram Notification service is an extremely valuable tool in your collection effort. We will help you locate current phone numbers so you can talk with 10 to 30 percent of your skip accounts, depending on the type of notification you use. The Tel–Scan and Telegram Notification services offer the most cost effective and accurate method of obtaining non-published and unlisted phone numbers of debtors.

Defendant acknowledges that its subscribers are attempting to obtain " 'locate' or 'contact' information, as well as deliver a ... message, either of which will then lead to follow-up actions (collection efforts, repossessions, arrests, etc.)."

Moreover, the functions of the initial notification to deliver a message and capture a telephone number are distinct from one another. Defendant bills its subscribers separately for identifying telephone numbers and for mailing notifications. · Logically, more consumers read the initial notification than call to retrieve a recorded message. Thus, if message delivery were the ultimate goal, the subscriber's message could be included in the initial written notification. Instead, defendant's service requires the consumer to call defendant to retrieve a recorded message so that the consumer's telephone number can be captured in conjunction with the delivery.

Defendant informs its subscribers that the consumer response rate is nearly doubled when no debt disclosures are made in the written notice. Because the subscriber would be required to include such disclosures on any correspondence it sent directly to the consumer, defendant's service clearly facilitates the subscriber's debt collection activities.

In *Romine*, in addition to electronically capturing the consumer's telephone number, a live operator also requested telephone number and address information directly from the consumer. The operator then read the subscriber's message aloud to the consumer before mailing a copy of the message to the consumer. Here, in contrast, defendant's system is entirely automated. Defendant argues that, because it can capture the consumer's telephone number and deliver the subscriber's message without live contact with the consumer, there is no potential for the kind of misconduct the Act was designed to prevent.

However, the fact that defendant delivers the message through an automated process rather than live operators does not alter the fact that it obtains the consumer's telephone number without the consumer's knowledge or consent, through direct contact with the consumer, and for the purpose of providing it to its collection agency subscribers.

Defendant also cites several cases holding that a mailing service was a messenger rather than a debt collector and that marketing alone did not change the character of the business. However, none of these cases involved the critical practice here: the capture and subsequent sale of consumer telephone numbers obtained through interaction with the consumer. *See Aquino v. Credit Control Servs.,* 4 F.Supp.2d 927 (N.D.Cal.1998)(service is not debt collection where it delivers telegrams composed by third-party collection agency, which telegrams did not ask consumer to contact deliverer). *See also Laubach v. Arrow Serv. Bureau, Inc.,* 987 F.Supp. 625 (N.D.Ill.1997)(conduct of defendant that printed and mailed collection letters for a collection agency did not constitute debt collection for purposes of the FDCPA); *Trull v. Lason Sys., Inc., supra* (same).

While the defendant in *Laubach* and *Trull* provided an additional service involving the

update of consumer addresses and telephone numbers, that service did not involve obtaining the telephone numbers directly from the consumers, electronically or otherwise. Here, in contrast, the consumer is instructed to contact defendant, and defendant then captures the telephone number directly from the consumer and provides the number to its subscriber for the purpose of facilitating debt collection.

Defendant argues that, nevertheless, it should be considered a messenger because the capture and distribution of consumer telephone numbers is a necessary incident to its message delivery service. It asserts that all users of toll-free services have access to a list of the telephone numbers from which individuals placed calls, either through billing statements or by use of appropriate equipment, and that because consumers have no privacy interest in their telephone numbers, capture and distribution should be permitted. According to defendant, the addition of an identification code that is matched to the captured telephone number is justified as a means to identify the caller as the intended recipient of the message.

Defendant contends that its "Tel–Scan" service is similar to Caller ID and that courts have found no constitutional privacy right against disclosure of telephone numbers by Caller ID services. However, the cases cited by defendant rely, at least in part, on a caller's ability to block transmission of the telephone number and on the recording of the number for legitimate purposes. *See Ohio Domestic Violence Network v. Pub. Utils. Comm'n,* 70 Ohio St.3d 311, 638 N.E.2d 1012, 1019 (1994)("a caller who does not activate that [blocking] feature would be deemed to consent to the disclosure of the telephone number and, thus, could not assert the privacy interests"); *see also California v. FCC,* 75 F.3d 1350 (9th Cir.1996)(preemption of state rule providing a per-line method of blocking Caller ID by FCC rule providing a per-call method did not violate constitutional privacy rights). Here, in contrast, the consumer is not able to block the capture of the telephone number. Moreover, the fact that defendant may be entitled to record the tele-

phone numbers does not exempt it from the requirements of the Act.

In addition, defendant's capture of consumer telephone numbers and matching to the subscriber-provided identification code does not appear to have a legitimate business purpose tied to message delivery. To the contrary, in our view, the obvious purpose of linking the identification codes and captured telephone numbers is to provide the subscriber with previously unknown telephone numbers to facilitate debt collection. The identification code does not confirm that the individual is the intended recipient because, as defendant acknowledges, anyone with a valid access code can retrieve the recorded message. *See also Romine, supra,* 155 F.3d at 1148. At most, the entry of the code indicates that the caller received the notification addressed to the intended recipient.

Furthermore, to the extent that the identification code is useful to allow defendant to bill its subscribers for completed delivery of voice telegrams, it is unnecessary to link that code to a captured telephone number or to forward the telephone number to the subscriber, because defendant bills its subscribers a flat rate for telephone number identification, which does not depend on the origin of the call.

We also disagree with defendant's argument that it is not "regularly" engaged in the collection of debts because the messages it transmits contain a reference to a debt only when the subscriber includes such language, and that therefore it is not a "collection agency".

To be considered a "collection agency," a person must "regularly" attempt to collect debts. Section 12–14–103(2)(a)(II)(A). Conduct is "regular" if its occurrence is not an isolated instance, but is done in the regular course of business. *See Romine, supra. See also Tragianese v. Blackmon,* 993 F.Supp. 96, 99 (D.Conn.1997)(defendant who sent out "more than a handful" of letters engaged in "regular" debt collection activity).

Defendant admits that its "Telegram Notification" service accounts for seventy percent of its business, and its promotional materials clearly target the "Tel–Scan" service to col-

lection agencies. Defendant does not argue that its capture of consumer telephone numbers and transmission to collection agencies is an isolated occurrence. Therefore, regardless of how often defendant transmits a message that includes reference to a debt, we conclude that it regularly engages in conduct that is indistinguishable from that addressed in *Romine*.

## II.

Plaintiff contends that a determination that defendant is a "collection agency" resolves all issues and that she is entitled to judgment in her favor. We agree in part.

### A.

■ We first reject defendant's argument that plaintiff is impermissibly attempting to appeal the denial of a motion for summary judgment. The denial of a motion for summary judgment is not an appealable interlocutory order because it is not a final determination on the merits, but decides only that the case should go to trial. Similarly, such an order may not be appealed after a full trial because it could lead to the absurd result that a party who had won after presentation of all the evidence could lose on appeal because he or she had not fully proved the case at the time of the motion for summary judgment. *Feiger, Collison & Killmer v. Jones,* 926 P.2d 1244 (Colo.1996).

Here, however, when the trial court denied plaintiff's motion for summary judgment, it granted summary judgment to defendant and then dismissed the case. It is this final judgment and the grant of summary judgment in favor of defendant that plaintiff appeals. Because we have concluded that the judgment is erroneous, we may reverse that judgment, and, to the extent that no factual issues remain, order the trial court on remand to enter judgment in plaintiff's favor. *See* C.A.R. 35(d)-(e).

### B.

■ Plaintiff contends that the use of a telegram format by a "collection agency" is deceptive and that because defendant's telephone number collecting activity renders it a "collection agency," its "telegram notifications" violate the Act and she is entitled to judgment enjoining defendant's mailing activities. We disagree.

The Act and the FDCPA prohibit the use of any "false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10) (2001); § 12–14–107(1)(k). The Act permits a "collection agency" to communicate with a consumer by means of a telegram. *See* § 12–14–108(1)(h), C.R.S.2001. However, the use of a simulated telegram format sent by regular mail has been held to be a deceptive means of communication under the FDCPA. *See In re Scrimpsher,* 17 B.R. 999 (Bankr. N.D.N.Y.1982).

■ Whether a particular method is deceptive is generally a question of fact. *See Trans World Accounts, Inc. v. FTC,* 594 F.2d 212 (9th Cir.1979)(FTC finding that simulated telegram misrepresented the nature, import, or urgency of the communication was supported by the evidence).

Here, because the trial court entered summary judgment, it did not determine whether the "telegram notification" format is deceptive. Thus, to the extent that plaintiff seeks to enjoin defendant from sending its "telegram notifications," additional proceedings are required in the trial court to determine whether the communications are deceptive.

### C.

■ The parties have stipulated that defendant's subscribers are ultimately responsible for the content of the written and recorded messages. Thus, the fact that defendant provides sample messages or assists its subscribers in drafting messages does not render it a collection agency on that basis. *See Randle v. GC Servs. L.P.,* 48 F.Supp.2d 835 (N.D.Ill.1999); *Powell v. Computer Credit, Inc.,* 975 F.Supp. 1034 (S.D.Ohio 1997).

However, defendant concedes that it not licensed as a collection agency, as required by §§ 12–14–115(1)(a) and 12–14–118, C.R.S. 2001, that it engages in the capture of telephone numbers directly from consumers, and

that it sends out "telegram notifications" that do not include the consumer disclosures required by §§ 12–14–105 and 12–14–109, C.R.S.2001.

Thus, to the extent that plaintiff seeks to require defendant either to obtain a license or desist from collecting and transmitting consumer telephone numbers to collection agencies without proper consumer notifications, plaintiff is entitled to an injunction prohibiting defendant from so violating the Act.

Because of our disposition, we need not address the other issues raised by the parties.

The judgment is reversed, and the case remanded for further proceedings consistent with this opinion.

Judge CASEBOLT and Judge NIETO concur.