The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
October 24, 2019

## 2019COA162

**No. 18CA1131, *State of Colorado v. 5 Star Feedlot* — Parks and Wildlife — Unlawful Taking; Criminal Law — Mens Rea — Actus Reus**

A division of the court of appeals addresses whether 5 Star
Feedlot, a cattle feedlot in eastern Colorado, can be liable under
section 33-6-110, C.R.S. 2019, for "taking" wildlife in violation of
sections 33-2-104(3), 33-2-105(4), and 33-6-109(1) after an
unusually heavy rainstorm caused one of its wastewater
containment ponds to overflow, allegedly killing nearly 15,000 fish
in a river three miles away. The division concludes that, to prove a
violation of those statutes, the State must prove that a defendant
acted knowingly, or at least that it performed some voluntary act,
and the State failed to present evidence of either in this case. As a

result, the division reverses the summary judgment in favor of the State and remands for entry of judgment in 5 Star's favor.

COLORADO COURT OF APPEALS                                    2019COA162

Court of Appeals No. 18CA1131
Yuma County District Court No. 16CV30022
Honorable Carl S. McGuire III, Judge

State of Colorado, Department of Natural Resources and Parks and Wildlife
Commission and Division of Parks and Wildlife,

Plaintiffs-Appellees,

v.

5 Star Feedlot Inc.,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE J. JONES
Tow, J., concurs
Fox, J., concurs in part and dissents in part

Announced October 24, 2019

Philip J. Weiser, Attorney General, Jake Matter, Senior Assistant Attorney
General, Joseph G. Phillips, Assistant Attorney General, Denver, Colorado, for
Plaintiffs-Appellees

Richards Carrington, LLC, Christopher P. Carrington, Ruth M. Moore, Denver,
Colorado, for Defendant-Appellant

Witwer, Oldenburg, Barry & Groom, LLP, John J. Barry, David J. Skarka,
Greeley, Colorado, for Amici Curiae Colorado Livestock Association, Colorado
Farm Bureau, and Colorado Corn Growers Association.

¶ 1    Defendant, 5 Star Feedlot Inc. (5 Star), appeals the district court's order denying its motion for summary judgment and granting summary judgment in favor of plaintiffs, the State of Colorado, Department of Natural Resources, Parks and Wildlife Commission and Division of Parks and Wildlife (the State).  The State sued 5 Star pursuant to section 33-6-110(1), C.R.S. 2019, for unlawful taking of wildlife after an unusually heavy rainstorm caused one of 5 Star's wastewater containment ponds to overflow.  It alleged that wastewater from the pond eventually entered the Republican River, leading to the deaths of almost 15,000 fish.  In ruling on the parties' cross-motions for summary judgment, the district court interpreted "take" in title 33 to mean "kill," ruled that section 33-6-110 creates a "strict liability offense," and, finding no genuine issue as to causation, concluded that 5 Star is strictly liable for the deaths of the fish.

¶ 2    We disagree with the district court's interpretation of the relevant wildlife statutes.  Those statutes required the State to prove that 5 Star acted knowingly, or at least that 5 Star performed some voluntary act that caused the fish to die.  The State didn't present any evidence of either a knowing or a voluntary act.  We

therefore reverse the summary judgment for the State and remand for entry of judgment in 5 Star's favor.

## I.    Background

¶ 3    5 Star operates a cattle feedlot in eastern Colorado near the South Fork of the Republican River and Hale Ponds.  It stores its wastewater from the feedlot in containment ponds built and maintained in compliance with Colorado Department of Health and Environment regulations.[1]

¶ 4    In the spring of 2015, a severe rainstorm hit the feedlot and surrounding areas.  Over six inches of rain fell over three days, including two inches within thirty minutes on the first day of the storm.[2]  Despite 5 Star's rapid repair efforts, approximately 500,000 gallons of wastewater mixed with rainwater escaped from one of the ponds via overflow and a partial breach and flowed several miles over land into the South Fork of the Republican River.[3]  A few days

---

[1] The State concedes that 5 Star's containment ponds comply with all relevant Colorado laws.
[2] 5 Star presented evidence that such intense rainfall over a thirty-minute period occurs in this area, on average, once every fifty years.
[3] The wastewater from the feedlot made up a minute portion of the approximately 134 million gallons of runoff water from thousands of

later, the State recovered 379 dead fish from the Republican River and Hale Ponds.

¶ 5    The State sued 5 Star under section 33-6-110(1), which authorizes the Colorado Division of Parks and Wildlife to bring a civil action "to recover possession or value or both possession and value of any wildlife taken in violation of articles 1 to 6" of title 33. In its amended complaint, the State alleged violations of sections 33-2-104(3), 33-2-105(4), and 33-6-109(1), C.R.S. 2019.  Section 33-6-109(1) makes it unlawful for any person to hunt, take, or have in his possession any wildlife that is the property of the State, unless otherwise permitted; sections 33-2-104(3) and -105(4) similarly proscribe taking and other conduct relating to nongame wildlife and threatened wildlife, respectively.

¶ 6    5 Star moved to dismiss the State's amended complaint under C.R.C.P. 12(b)(5), arguing that it didn't "take" the fish under the wildlife code's definition of "take."  The district court denied that motion.  Later, both sides filed motions for summary judgment.

---

acres of land that entered the Republican River upstream from where the dead fish were found.

3

The State argued that 5 Star is strictly liable for and had caused the deaths of the fish. 5 Star argued that the State must prove both a mens rea (mental state) and an actus reus (unlawful voluntary act), and that the State hadn't presented evidence of either. It also argued that the State hadn't established the existence of a genuine issue of material fact as to whether 5 Star had proximately caused the fish to die.[4]

¶ 7    The district court denied 5 Star's motion and granted the State's motion as to liability, concluding that 5 Star "took" the fish in violation of the wildlife statutes. Specifically, the court ruled that "take" in section 33-6-109(1) includes "kill," and that 5 Star had killed the fish; 5 Star is strictly liable for the killings; and there was no genuine issue of material fact as to causation (that is, 5 Star had caused the fish to die). The court later ordered 5 Star to pay the State $625,755.[5]

---

[4] 5 Star laid out these arguments in its "Combined Response to State's Motion for Summary Judgment" and "Reply in Support of 5 Star's Motion for Summary Judgment."

[5] Though the State had recovered only 379 dead fish, it "extrapolated" from that number to claim almost 15,000 total fish deaths. The court based its damage calculation on that higher, extrapolated figure.

## II.    Discussion

¶ 8    5 Star argues on appeal that the district court erred by (1) imposing liability on it for taking wildlife because it didn't "take" any fish, didn't "knowingly" take any fish, and didn't perform any voluntary act causing the fish to die; (2) granting summary judgment for the State because there were genuine issues of material fact; and (3) not granting 5 Star's motion for summary judgment because the State didn't present sufficient evidence that 5 Star caused the fishes' deaths.  Because we conclude that the district court misinterpreted the wildlife statutes in imposing liability on 5 Star, we don't address 5 Star's second and third contentions.

### A.    Standard of Review and Principles of Statutory Interpretation

¶ 9    We review de novo a district court's order granting or denying summary judgment.  *Westin Operator, LLC v. Groh*, 2015 CO 25, ¶ 19.  We also review de novo questions of statutory interpretation. *Colo. Oil & Gas Conservation Comm'n v. Martinez*, 2019 CO 3, ¶ 19.

¶ 10    When interpreting a statute, our task is to discern and give effect to the General Assembly's intent.  *Krol v. CF & I Steel*, 2013 COA 32, ¶ 15.  In doing so, we look to the entire statutory scheme

5

to give consistent, harmonious, and sensible effect to all of its parts, and we apply words and phrases in accordance with their plain and ordinary meanings. *Id.*; *see Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1089 (Colo. 2001). Unless the statute is ambiguous, we enforce it as written without resorting to other rules of statutory construction. *Denver Post Corp.*, 255 P.3d at 1089; *Krol*, ¶ 15.

## B. Analysis

### 1. Section 33-6-110(1) Requires the State to Prove All Elements of a "Violation of" the Criminal Statutes Underlying the State's Claim

¶ 11 5 Star's statutory interpretation arguments are, in relevant part, premised on the assertion that the State can prevail on a claim under section 33-6-110(1) only if it proves everything required to prove a violation of the criminal statutes underlying the claim, including a culpable mental state and an unlawful voluntary act.[6] The State concedes that it must prove all elements of a violation of the underlying statutes on which it relies — sections 33-2-104, 33-2-105, and 33-6-109 — albeit by only a preponderance of the

---

[6] The State concedes that 5 Star preserved all of its arguments for appeal.

evidence.  But it argues that the mens rea and actus reus concepts that 5 Star invokes don't apply to section 33-6-110(1) and the underlying statutes because they create only strict liability offenses.

¶ 12    Looking to the plain language of section 33-6-110(1), we agree with the parties that the State can't establish liability under that statute without also proving all elements of culpability under the predicate criminal offenses.

¶ 13    As noted, section 33-6-110(1) authorizes the State to bring a civil action to recover the value of wildlife taken "*in violation of articles 1 to 6*" of title 33.  (Emphasis added.)  So by the statute's plain language, the State can't recover unless it proves a violation of a provision of articles 1 to 6 of title 33.  As a matter of logic, doing so necessarily requires that the State prove all of the elements of whatever underlying violation the State alleges.

¶ 14    In this way, section 33-6-110(1) is similar to the civil theft statute, § 18-4-405, C.R.S. 2019.  That statute allows the owner of stolen property to file a civil action against someone who took his property or who has possession of it.  But to prevail on a civil claim under that statute, the owner must prove all of the elements of criminal theft, even though the burden of proof is only

7

preponderance of the evidence. *Itin v. Ungar*, 17 P.3d 129, 133 (Colo. 2000); *Scott v. Scott,* 2018 COA 25, ¶ 26; *Black v. Black*, 2018 COA 7, ¶ 93.

¶ 15    We turn, then, to 5 Star's contentions that the underlying statutes require proof of a culpable mental state and a voluntary act, and that the State didn't present any evidence of either.

## 2.    Mens Rea

¶ 16    5 Star contends that the mental state of "knowingly" applies to violations of section 33-6-109(1),[7] and by extension to the State's claim in this case, and that the State didn't present any evidence that it acted knowingly.  The State counters that section 33-6-109(1), and by extension section 33-6-110, creates a strict liability offense.  We agree with 5 Star.

¶ 17    Section 33-6-109(1) provides that "[i]t is unlawful for any person to hunt, take, or have in such person's possession any

---

[7] The parties focus their arguments on section 33-6-109(1), C.R.S. 2019, as they did in the district court.  We will as well, because section 33-2-104(3), C.R.S. 2019, and section 33-2-105(4), C.R.S. 2019, are worded very similarly to section 33-6-109(1).  Though those sections, unlike section 33-6-109(1), don't include a provision for criminal liability, another statute makes it a misdemeanor to violate those sections.  § 33-6-104(1), C.R.S. 2019.

8

wildlife that is the property of this State as provided in section 33-1-101, except as permitted by articles 1 to 6 of this title or by rule or regulation of the commission." A violation of this provision is a misdemeanor. § 33-6-109(3).

¶ 18    Section 33-6-109(1) doesn't specify any culpable mental state that must be proved to show a violation thereof. But the lack of an expressed mental state in that section doesn't mean there isn't a required mental state: "because a crime ordinarily requires the conjunction of an act and a culpable mental state, legislative silence on the element of intent in a criminal statute is not to be construed as an indication that no culpable mental state is required." *People v. Moore*, 674 P.2d 354, 358 (Colo. 1984). If "the proscribed conduct necessarily involves such a culpable mental state[,]" one may be implied. § 18-1-503(3), C.R.S. 2019. We conclude that the culpable mental state of "knowingly" is implied in section 33-6-109(1).

¶ 19    "A person acts 'knowingly' or 'willfully' with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists." § 18-1-501(6), C.R.S. 2019. With respect to a

9

result of his conduct, a person acts "knowingly" or "willfully" "when he is aware that his conduct is practically certain to cause the result." *Id.* Divisions of this court have concluded that this mental state is implied in certain offenses under title 33 that are similar to that created by section 33-6-109.

¶ 20    In *People v. Lawrence*, 55 P.3d 155, 162 (Colo. App. 2001), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004), a division held that the trial court didn't err when it instructed the jury that "knowingly" was the culpable mental state for killing and abandoning wildlife as proscribed by section 33-6-117, C.R.S. 2001.  The statute then read as follows:

> [I]t is unlawful for any person to hunt or take, or to solicit another person to hunt or take, any wildlife and detach or remove, with the intent to abandon the carcass or body, only the head, hide, claws, teeth, antlers, horns, internal organs, or feathers or any or all such parts or to kill and abandon any wildlife.

§ 33-6-117(1), C.R.S. 2001.  Rejecting the defendant's argument that proof of specific intent applied to a prosecution under the last phrase — "to kill and abandon any wildlife" — the division held that the language "with the intent" in the statute didn't apply to that phrase. *Lawrence*, 55 P.3d at 162-63.  But, noting that a mental

10

state can be inferred from a statute when none is expressed, the division concluded that "knowingly" applied to "to kill and abandon any wildlife" because (1) the first part of the statute established a specific intent crime, suggesting that the General Assembly wanted to make the second part only a general intent crime; and (2) the language of the statute "logically requires 'knowing' that one killed and abandoned wildlife." *Id.* at 163.

¶ 21  Addressing a later version of section 33-6-117(1), which made it unlawful "to abandon the carcass or body of such wildlife; or to take and abandon wildlife," § 33-6-117(1), C.R.S. 2007, another division of this court applied the same reasoning, holding that the statute required only that an offender *knowingly* take and abandon wildlife, *People v. Gordon*, 160 P.3d 284, 289 (Colo. App. 2007).

¶ 22  In both *Lawrence* and *Gordon*, the divisions viewed the question of the required mental state as whether a showing of specific intent or mere knowing conduct was required. Neither division appears to have regarded requiring no culpable mental state as an option. To the contrary, both divisions considered the nature of the conduct proscribed to require knowing conduct.

11

¶ 23    We conclude that the reasoning of *Lawrence* and *Gordon* —

that the statutory language "logically requires 'knowing'" — applies

to the offenses described in section 33-6-109(1), including unlawful

taking. *Gordon,* 160 P.3d at 289; *Lawrence,* 55 P.3d at 163; *see*

§ 18-1-503(2) (a mental state may be implied "if the proscribed

conduct necessarily involves such a culpable mental state").

Section 33-6-109(1) proscribes conduct that is virtually identical to

the conduct proscribed by the versions of section 33-6-117

construed in those cases. It makes it unlawful to "hunt, take, or

have in such person's possession" wildlife that belongs to the State.

§ 33-6-109(1). Logically, a person can't hunt without knowing he is

doing so; hunting requires some deliberate action. *See* § 33-1-

102(25.5), C.R.S. 2019 ("'Hunt' means to pursue, attract, stalk, lie

in wait for, or attempt to shoot, wound, kill, trap, capture, collect,

or take wildlife."). Likewise, interpreting "have in such person's

possession" consistent with generally applicable principles of

criminal law, a person can't possess something without knowing he

is doing so. *See* § 18-1-501(9) (possession isn't a voluntary act, and

therefore isn't a crime, unless the actor was aware of his physical

possession or control over the property); *Patton v. People,* 35 P.3d

124, 131 (Colo. 2001) (construing a statute proscribing possession of a controlled substance and concluding that "'possession' requires immediate and knowing control over the substance").

¶ 24    Like "hunt" and "have in such person's possession," we conclude that "take," a term at issue in *Gordon*, also logically requires knowing conduct.  We don't see any indication in the statute that different mental states would apply to different acts within the phrase "hunt, take, or have in such person's possession." § 33-6-109(1).  We also observe that the term "take" is defined in title 33 as "to acquire possession of wildlife." § 33-1-102(43).  In turn, "possession" is defined as "either actual or constructive possession of or any control over the object referred to." § 33-1-102(34).  As noted, to establish possession it must be shown that the person was aware of his possession.  "Control," as well, implies some knowledge or awareness.  *See* Black's Law Dictionary 416 (11th ed. 2019) ("[t]o exercise power or influence over").[8]

_____

[8] The State's theory of liability is that 5 Star controlled the fish — that is, took them — by killing them.

13

¶ 25    In sum, we conclude that the culpable mental state of "knowingly" is implied in section 33-6-109(1)'s prohibition of hunting, taking, or having in one's possession wildlife belonging to the State.  The State, however, didn't present any evidence that 5 Star "knowingly" took the fish.  (Indeed, the State never even alleged that 5 Star acted knowingly in any way.)  Instead, it argued, and the district court erroneously ruled, that 5 Star was strictly liable for the fishes' deaths.[9]

¶ 26    During oral argument, but only in response to a judge's question, counsel for the State suggested that 5 Star's mere operation of the feedlot subjected it to liability.  Even assuming that we can consider that assertion, *but see McGihon v. Cave*, 2016 COA 78, ¶ 10 n.1 (appellate court won't address arguments first offered

---

[9] The State's answer brief on appeal cites an unpublished opinion by a division of this court which, it says, holds that section 33-6-109 creates a strict liability offense.  By citing that case, the State violated this court's formal policy prohibiting parties from citing unpublished decisions of this court, with exceptions that don't apply in this case.  *See Colorado Court of Appeals, Citation Policies, Policy Concerning Citation of Unpublished Opinions* (2019), https://perma.cc/5GTB-QMA5.  Indeed, the State expressly acknowledged its awareness of that policy in its brief.  The State's willful violation of our policy is appalling.  We trust that it won't be repeated.

at oral argument), we reject it. Counsel didn't assert that in building and operating the containment ponds, 5 Star did so with the awareness that this conduct was "practically certain to cause" the deaths of almost 15,000 fish (or any fish) in a river miles away. *See* § 18-1-501(6). And we can't glean any reasonable inference of such knowledge from the evidence the State submitted on summary judgment.

### 3.   Actus Reus

¶ 27    5 Star also contends that, to prove a violation of section 33-6-109(1), the State must prove that the defendant committed a voluntary act, or actus reus, and that the State failed to present any evidence of such an act by 5 Star. This is so, 5 Star argues, even if the underlying statutes create only strict liability offenses — that is, even if the underlying criminal statutes don't require proof of a culpable mental state. The State argues that the voluntary act requirement doesn't apply to strict liability offenses. We agree with 5 Star in full.

¶ 28    "In order to subject a person to criminal liability for his conduct, there generally must be a concurrence of an unlawful act (actus reus) and a culpable mental state (mens rea)." *People v.*

*Marcy*, 628 P.2d 69, 73 (Colo. 1981). With respect to the unlawful act, criminal culpability requires "the performance by a person of conduct which includes a voluntary act or the omission to perform an act which he is physically capable of performing." § 18-1-502, C.R.S. 2019. A "voluntary act" means "an act performed consciously as a result of effort or determination, and includes the possession of property if the actor was aware of his physical possession or control thereof for a sufficient period to have been able to terminate it." § 18-1-501(9). An omission is "a failure to perform an act as to which a duty of performance is imposed by law." § 18-1-501(7).

¶ 29    Though, as noted, most criminal offenses require a concurrence of a voluntary act and a culpable mental state, *see Marcy*, 628 P.2d at 73, the General Assembly "may create offenses *requiring only the voluntary performance of an act,* requiring proof only that the prohibited conduct was 'the product of conscious mental activity involving effort or determination,'" *People v. Wilhelm,* 676 P.2d 702, 706 (Colo. 1984) (emphasis added) (quoting *People v. Rostad,* 669 P.2d 126, 129 (Colo. 1983)). In the case of such a

strict liability offense,[10] an actor may be liable even if it didn't expect the consequences of its action. And so it follows that even if we were to agree with the State and the district court that section 33-6-109(1) creates a strict liability offense, proof that the defendant performed a voluntary act (or failed to perform an act that it had a legal duty to perform) is still required.

¶ 30    Our conclusion finds additional support in decisions construing other strict liability offenses. For instance, in *People v. Garcia*, 189 Colo. 347, 351, 541 P.2d 687, 689 (1975), a case involving fourth degree arson, the court held, relying on section 18-1-502, that proof of a voluntary act was required: a person could not be found guilty if the fire was started "by events beyond the actor's control; the actor must purposefully start a fire, though he may not intend or foresee the consequences." Indeed, our appellate courts have applied this principle in a variety of other strict liability contexts, apparently without exception. *See, e.g.*, *Rostad*, 669 P.2d

---

[10] Strict liability crimes are different in at least one important, relevant way from strict liability torts. Strict liability in tort "may arise regardless of the defendant's conduct[,]" while a strict liability crime "requires . . . that proscribed conduct be voluntarily performed." *Lui v. Barnhart*, 987 P.2d 942, 944 (Colo. App. 1999).

17

at 129-30 (vehicular homicide, though a strict liability offense, requires proof of a voluntary act; "the minimal requirement for a 'strict liability' offense is proof that the proscribed offense was performed voluntarily — *i.e.*, that such act must be the product of conscious mental activity involving effort or determination"); *People v. Caddy*, 189 Colo. 353, 355, 540 P.2d 1089, 1091 (1975) (though speeding is a strict liability offense, proof of a voluntary act is required); *People v. Hoskay*, 87 P.3d 194, 198 (Colo. App. 2003) (public indecency is a strict liability offense but proof of a voluntary act is required).

¶ 31    In this case, the State didn't argue below or present any evidence to the district court showing that 5 Star performed a voluntary act or failed to perform an act that it had a legal duty to perform.  Nor did it argue anything to that effect in its answer brief on appeal.  As noted, at oral argument counsel for the State suggested that 5 Star's mere lawful operation of its feedlot could constitute the requisite culpable conduct.  That suggestion fails in this context as well, for three reasons.

¶ 32    First, the operation of the feedlot wasn't, even according to the State, the act that killed the fish.  Rather, it was — and remains —

the State's theory that the discharge from the feedlot killed the fish.[11]  But the discharge wasn't an act by 5 Star, or at least wasn't a voluntary act: it wasn't "an act performed consciously [by 5 Star] as a result of effort or determination."  § 18-1-501(9).

¶ 33     Second, and relatedly, a lawful voluntary act that alone doesn't result in any transgression of the law can lead to criminal culpability only if coupled with an unlawful voluntary act.  *See, e.g.,* *Martin v. State,* 17 So. 2d 427 (Ala. Ct. App. 1944) (the defendant didn't perform a voluntary act, and therefore didn't commit public intoxication, when he got drunk at home and was brought out into the public by police officers); *State v. Turner,* 953 S.W.2d 213, 216 (Tenn. Crim. App. 1996) (no crime of being in control of a vehicle while intoxicated, a strict liability offense, if an intoxicated person's friends carry him into his car and leave him there); *see also Marcy,* 628 P.2d at 73 ("there generally must be . . . an unlawful act"); COLJI-Crim. G1:01 (2018) ("A crime is committed when the defendant has committed a voluntary act *prohibited by law,*

---

[11] The State admitted in the district court that the "discharge" from the containment ponds was the sole event resulting in the fishes' deaths.

19

together with a culpable state of mind.") (emphasis added); *cf.*
*Commonwealth v. Collier*, 693 N.E.2d 673, 676 (Mass. 1998) (state
was required to prove that the defendant, a mere passenger in a
vehicle, intended for the vehicle to pass close to his former wife to
show a violation of a protective order barring him from being within
100 yards of her; a voluntary act cannot be merely accidental or
mistaken). The only "act" combining with 5 Star's lawful operation
of the feedlot that allegedly caused the fishes' deaths was the
rainstorm. That event was neither unlawful nor voluntary nor an
act on 5 Star's part.

¶ 34    Third, 5 Star's operation of the feedlot wasn't an "omission to
perform an act." § 18-1-502. Recall, an omission for which one
may be culpable is a "failure to perform an act as to which a duty of
performance is imposed by law." § 18-1-501(7). The State has
never even alleged that 5 Star violated any law or regulation giving
rise to a legal duty to prevent the spill in question. *See* 1 Wayne R.
LaFave, *Substantive Criminal Law* § 6.2(a), at 590, Westlaw (3d ed.
database updated Oct. 2018) (the duty to act must be "a legal duty
and not simply a moral duty").

## III. Disposition

¶ 35 5 Star asks that we reverse the judgment and remand for entry of judgment in its favor: it appeals not only the summary judgment in the State's favor, but also the district court's denial of its motion for summary judgment.

¶ 36 Ordinarily, an order denying a motion for summary judgment isn't appealable. *Feiger, Collison & Killmer v. Jones*, 926 P.2d 1244, 1251 (Colo. 1996) (a party can't appeal the denial of a summary judgment motion following a judgment entered after a trial); *Glennon Heights, Inc. v. Cent. Bank & Tr.*, 658 P.2d 872, 875 (Colo. 1983) ("[A] denial of a motion for summary judgment is not an appealable order when it does not otherwise put an end to the litigation."); *see Chase v. Farmers Ins. Exch.*, 129 P.3d 1011, 1015 (Colo. App. 2004). But when a district court rules on cross-motions for summary judgment — denying summary judgment for one party and granting summary judgment for the other — the judgment is final and we may review the denial. *See Yaffe Cos., Inc. v. Great Am. Ins. Co.*, 499 F.3d 1182, 1184 (10th Cir. 2007) ("[A]n order denying summary judgment is reviewable when . . . it is coupled with a grant of summary judgment to the opposing party." (quoting

*Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121, 1124 (9th Cir. 2002)));

*In re Estate of Scott*, 119 P.3d 511, 515-16 (Colo. App. 2004), *aff'd on other grounds*, 136 P.3d 892 (Colo. 2006); *Udis v. Universal Commc'ns Co.*, 56 P.3d 1177, 1183 (Colo. App. 2002).

¶ 37    When 5 Star moved for summary judgment, pointing out the lack of any allegation or supporting evidence of a culpable mental state or voluntary act, it was incumbent on the State to come forward with evidence demonstrating a genuine issue of material fact. *Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 712-13 (Colo. 1987). It failed to do so. Because it failed to do so, we may direct the entry of judgment against it and for 5 Star. *In re Estate of Scott*, 119 P.3d at 515-16 (where party failed to show genuine issue of material fact on cross-motions for summary judgment, appellate court directed judgment against that party); *Udis*, 56 P.3d at 1183 (if the record shows that no issue of fact remains, appellate court may direct entry of judgment in favor of party who unsuccessfully cross-moved for summary judgment); *see Witcher v. Canon City*, 716 P.2d 445, 456-57 (Colo. 1986) (a party's failure to challenge evidence submitted in support of summary judgment in the district court waives any such challenge on appeal); 11 James Wm. Moore

22

et al., *Moore's Federal Practice* § 56.81[2] (3d ed. 2015) (a party's failure to timely respond to the moving party's characterization of material facts as undisputed justifies entry of summary judgment for the moving party if the test for summary judgment is met).

¶ 38     The partial dissent's assertion that "there was no need for the State to come forward" with "evidence of a knowing or voluntary act" "[b]ecause the trial court applied an incorrect legal standard" is contrary to the well-settled law cited above.[12] *Infra* ¶ 43. 5 Star made its required showing and the State was therefore obliged to counter it. The fact the State chose not to do so, but instead chose to rely solely on a legal argument — that it didn't have to show a mens rea or a voluntary act — doesn't entitle the State to a second bite at the apple (a second bite that the State didn't even ask for in its brief on appeal). Put differently, the district court's erroneous acceptance of the State's legal argument didn't retroactively relieve the State of its obligation to come forward with evidence showing

---

[12] None of the cases cited by the partial dissent support its conclusion. None of them concern cross-motions for summary judgment where the party which lost in the district court satisfied its burden of showing the nonexistence of any genuine issue of material fact.

the existence of a genuine issue of fact. The State put all of its eggs in one basket at its peril. It isn't our job to rescue the State from the consequences of its litigation strategy.

¶ 39 Contrary to the partial dissent's suggestion, we haven't considered any evidence outside the summary judgment record. (Indeed, no party has presented to us any such evidence.) We have considered only the summary judgment filings, which, it seems appropriate to point out, include the State's sworn discovery response that the discharge from the containment ponds was the only event that caused the fish to die.

¶ 40 To the extent the partial dissent deems there to be a genuine issue of material fact as to whether the containment ponds were "suitable to provide capacity for a twenty-five year, twenty-four-hour storm event," *infra* ¶ 49, we can't agree with the premise of that assertion. The State has *never even argued* that 5 Star failed to comply with any law relating to the construction and maintenance of the containment ponds. Indeed, it has conceded that 5 Star complied with all such laws. Even putting aside the fact that we should not be making arguments for a party, especially arguments contrary to that party's concessions, the law is clear that

24

for a failure to act to constitute the requisite actus reus, the act must be one as to which the law imposes a duty to perform.  § 18-1-501(7).  Again, the State has never even alleged such an act, and the partial dissent doesn't cite any legal authority imposing the duty it implicitly would fault 5 Star for failing to meet.

¶ 41    Lastly, the fact that "causation remains hotly disputed" is irrelevant.[13]  *Infra* ¶ 49.  If a party fails to establish a genuine issue of material fact on an element as to which it bears the burden of proof, it matters not that there is a genuine issue of material fact on another element: summary judgment is proper.  *E.g.*, *Nelson v. Elway*, 908 P.2d 102, 106-07 (Colo. 1995) (summary judgment proper where the plaintiffs failed to establish a genuine issue of material fact on one element of a civil conspiracy claim); *Casey v. Christie Lodge Owners Ass'n, Inc.*, 923 P.2d 365, 366-67 (Colo. App. 1996) (summary judgment proper where the plaintiff failed to show existence of a genuine issue of material fact on knowledge element of premises liability claim); *see Celotex Corp. v. Catrett*, 477 U.S.

---

[13] Given our resolution of other issues, we need not address 5 Star's contention that there is a genuine issue of material fact as to causation.

25

317, 322 (1986) (summary judgment is required "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case").

## IV.    Conclusion

¶ 42    We reverse the summary judgment in favor of the state and remand the case for entry of judgment in 5 Star's favor.

JUDGE TOW concurs.

JUDGE FOX concurs in part and dissents in part.

JUDGE FOX, concurring in part and dissenting in part.

¶ 43    I concur with the majority's conclusions that the operative statutes required the State to prove that 5 Star acted knowingly and performed some voluntary act that caused the fish to die.  But I dissent from its conclusion that summary judgment should enter in 5 Star's favor because the State did not present evidence of a knowing or voluntary act.  Because the trial court applied an incorrect legal standard, there was no need for the State to come forward with such evidence and genuine issues of material fact remain regarding whether 5 Star acted knowingly and voluntarily; summary judgment for 5 Star is therefore not proper.  Likewise, causation is disputed and is a material fact question that is not appropriate for summary judgment disposition at the appellate level.

## I.    Standard of Review

¶ 44    Summary judgment is a drastic remedy, appropriate only where there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  C.R.C.P. 56(c); *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 570 (Colo. 2008).  We review a summary judgment ruling de novo.  *Gibbons v.*

27

*Ludlow*, 2013 CO 49, ¶ 11; *see also Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1340 (Colo. 1988) ("[A] party's failure to satisfy the burden of proof on its own motion for summary judgment 'does not automatically indicate that the opposing party has satisfied [its] burden and should be granted summary judgment on the other motion.'") (citation omitted). Moreover, we may only consider the record as presented to the trial court and not consider additional arguments or evidence offered on appeal. *Mohr v. Kelley*, 8 P.3d 543, 545 (Colo. App. 2000) (appellate jurisdiction limited to issues which had been before the district court in proper procedural posture (citing *Cty. Court v. Ruth*, 194 Colo. 352, 575 P.2d 1 (1977))).

¶ 45    Because the majority sets out the correct review standard for statutory interpretation, I do not repeat it here.

## II.    The Trial Court's Ruling

¶ 46    Having concluded that the wildlife statutes at issue gave rise to strict liability, the trial court concluded that there was "no genuine issue of material fact as it relates to liability . . . [and given the] clear showing that the controlling standards" were met, it proceeded to set the case for trial on damages. Thus, there was no

inquiry — or factfindings — made regarding 5 Star's knowledge or whether its acts were voluntary.

### III.    Analysis

¶ 47    I cannot say on the sparse summary judgment record that the parties agree that 5 Star acted — or failed to act — voluntarily or with knowledge.  Acting voluntarily and with knowledge is the standard the division announces today; matters like voluntary action and knowledge are fact-laden and inappropriate for disposition on summary judgment, especially by an appellate court. *See, e.g.*, *Lombard*, 187 P.3d at 572 (holding that a genuine issue of material fact existed as to whether a conference center had constructive knowledge that a ladder from a loft constituted a danger and so summary judgment was inappropriate); *Mancuso v. United Bank of Pueblo*, 818 P.2d 732, 740-41 (Colo. 1991) (holding that a genuine issue of material fact existed regarding whether the bank had actual knowledge of customer's son's alleged breach and reversing part of a summary judgment grant); *People v. Madison*, 176 P.3d 793, 798 (Colo. App. 2007) ("A fact finder may infer intent to cause the natural and probable consequences of unlawful

voluntary acts, and pertinent to the inquiry is the defendant's conduct and the circumstances surrounding any act or omission.").

¶ 48 There is another reason I disagree with the majority's decision to remand for entry of summary judgment in 5 Star's favor. Because the trial court's findings were based on an erroneous view of the law, *see, e.g., Pullman-Standard v. Swint,* 456 U.S. 273, 287 (1982), the record does not permit only one resolution of material issues of fact, *Camacho v. Honda Motor Co., Ltd.,* 741 P.2d 1240, 1248 (Colo. 1987) (reversing court of appeals' holding affirming district court's granting of defendant's motion for summary judgment dismissing plaintiff's products liability action against motorcycle manufacturers after reinterpreting the standard for when a product is defective and unreasonably dangerous and remanding where the court noted that the answer to this issue could not be determined based on the "limited facts thus far presented to the trial court"); *see also Jolly v. People,* 742 P.2d 891, 898-900 (Colo. 1987) (recognizing that when an appellate court holds that different elements apply than those applied at trial, a remand for a new trial is appropriate); *People v. Riley,* 708 P.2d

1359, 1366 (Colo. 1985) (reversing and remanding for a new trial after the trial court misinterpreted the applicable statute).

¶ 49    What the State can prove under the standards the majority announces here remains to be seen and does not need to be detailed here.  The State's representation that the discharge from the containment ponds caused the fishes' deaths is not dispositive, especially where the record indicates that, according to the State, the impoundments from which the materials left 5 Star's property following the storm had eroded and may not have been suitable to provide capacity for a twenty-five-year, twenty-four-hour storm event, much less for the actual rain event in question.  The record contains competing expert opinions concerning this and other relevant issues.  For example, in addition to questions whether 5 Star acted with knowledge and voluntarily, the record discloses that causation remains hotly disputed.  A remand, therefore, is necessary, *Swint*, 456 U.S. at 292, because genuine issues of material fact remain, *see, e.g., Smith v. Boyett*, 908 P.2d 508, 515 (Colo. 1995); *Struble v. Am. Family Ins. Co.*, 172 P.3d 950, 957 (Colo. App. 2007).

¶ 50    I therefore respectfully dissent from the part of the majority's decision that remands for entry of summary judgment in 5 Star's favor.  In all other respects, I join the majority.